IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01790-MSK-CBS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

COLLEGE PHARMACY, INCORPORATED,

        Forfeiture and Injunctive Defendant,

and

COLLEGE PHARMACY, INCORPORATED
EMPLOYEE STOCK OWNERSHIP TRUST
RACHEL CHRISTOPHER, TRUSTEE,

        Injunctive Defendant.

---

## CONSENT DECREE OF PERMANENT INJUNCTION
---

Plaintiff, United States of America, having filed this action by filing its Complaint for Permanent Injunction, and College Pharmacy, Incorporated ("College Pharmacy") and College Pharmacy, Incorporated Employee Stock Ownership Trust ("College Pharmacy ESOP"), having appeared and consented to the entry of this Decree of Permanent Injunction without contest and before any testimony was taken, and the United States of America, having consented to this Decree of Permanent Injunction;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. This Court has jurisdiction over the subject matter of this action and has personal jurisdiction over the parties to this action.

2. The parties agree that the Complaint for Permanent Injunction states a cause of action against College Pharmacy, Incorporated under the Federal Food, Drug, and Cosmetic Act (the

"Act"), 21 U.S.C. § 301, et seq. The Complaint alleges that between 2003 and 2007, when Thomas Bader was its owner, College Pharmacy violated 21 U.S.C. § 331(d) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce human growth hormone within the meaning of 21 U.S.C. § 321(p) that are neither approved under 21 U.S.C. § 355(a), nor exempt from approval pursuant to 21 U.S.C. § 355(I).

3. College Pharmacy and College Pharmacy ESOP, who presently owns College Pharmacy, have appeared in this action and consented to entry of this Decree of Permanent Injunction, for the purpose of resolving this case and Criminal Action No. 07-cr-00338-MSK. The government agrees to dismiss without prejudice the criminal charges against College Pharmacy brought in Case No. 07-cr-00338-MSK, said dismissal being contingent upon College Pharmacy's encouragement and facilitation of ongoing cooperation of its employees and officers with the government's prosecution of the case, College Pharmacy's entry into this Settlement Agreement for Forfeiture and Entry of Consent Decree of Permanent Injunction, and Entry of the Consent Decree of Permanent Injunction by the Court; the parties agree that should College Pharmacy and College Pharmacy ESOP fail to comply with the terms of the Settlement Agreement for Forfeiture and the Consent Decree, the United States may re-institute the criminal charges. The government also consents to the entry of this Decree of Permanent Injunction because the time frame of the alleged violations of law contained in the indictments and in the complaint filed in this action covers a period of time from January, 2003 through June, 2007. During that time frame, Thomas Bader, was the owner of College Pharmacy. Presently, Thomas Bader no longer owns and operates College Pharmacy, nor does he have any involvement with College Pharmacy ESOP. On December 18, 2007, Defendant Bader entered into an agreement,

entitled "Stipulation and Final Agency Order", with the Colorado State Board of Pharmacy ("State Board"). Pursuant to that agreement, Mr. Bader permanently relinquished his pharmacy license, transferred all of his stock in College Pharmacy to College Pharmacy ESOP, resigned as both director and sole officer, and agreed not to participate in the management or operation of College Pharmacy in the future. The transfer/sale was completed on January 15, 2008 and College Pharmacy ESOP is now the record owner of College Pharmacy and controls its management and operation.

4. College Pharmacy and College Pharmacy ESOP represent that: (i) neither Thomas W. Bader, nor any member of his family, by blood or by marriage, is employed by College Pharmacy in any capacity, including as a consultant, nor involved, in any manner, in any of College Pharmacy's pharmacy operations;[1] and (ii) College Pharmacy shall never employ either Thomas W. Bader, nor any member of his family, by blood or by marriage, in any capacity, including as a consultant; and (iii) College Pharmacy shall never permit either Thomas W. Bader, nor any member of his family, by blood or by marriage, to become involved, in any manner, in any of College Pharmacy's pharmacy operations.

5. Upon entry of this Decree of Permanent Injunction, College Pharmacy and College Pharmacy ESOP agree to the following:

    a. It will file all hGH (including somatropin) and Schedule III (including

---

[1] The parties recognize, however, that College Pharmacy 1 presently leases its place of business from an entity in which Thomas Bader has an interest. In addition, Mr. Bader's Stipulation and Final Agency Order, with the Colorado State Board of Pharmacy, specifically permits Thomas Bader to have access to a small office in the same building and requires College Pharmacy to allow Mr. Bader "access to his records and those of College Pharmacy so that he may aid in his defense of the criminal charges now pending against him." Finally, College Pharmacy notes that it has some minor business interrelationships with Thomas Bader, which College Pharmacy will be terminating within 60 days.

testosterone), Schedule IV, and Schedule V prescriptions separate from allother prescriptions and other records. Otherwise, it will comply with the Controlled Substances Act, 21 U.S.C. §§ 827, 829, and 841 et seq., and all applicable regulations in the Code of Federal Regulations, Title 21, Parts 1304 and 1306;

b. It will refrain from introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce hGH (including somatropin) other than hGH (including somatropin) that is (i) contained in an FDA approved drug product, (ii) dispensed pursuant to a patient-specific prescription, and (iii) for approved uses only, as determined by the Secretary of Health and Human Services or the FDA; and

c. Notwithstanding this paragraph, nothing herein prohibits CollegePharmacy and each and all of its directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them who receive actual notice of this Decree of Permanent Injunction by personal service or otherwise from engaging in the practice of pharmacy, including compounding of drugs, pursuant to state or federal laws. Notwithstanding, College Pharmacy understands that DEA will conduct a pre-registration investigation on its pending application to be registered with DEA as a practitioner pharmacy and take appropriate action on the application.

6. Within five (5) calendar days of FDA's, DEA's, or any of their designees' request for prescription records for any somatropin and testosterone (including testosterone cypionate) dispensed by College Pharmacy, College Pharmacy agrees to submit a copy of the requested

materials to the FDA, DEA, or any of their designees, in the manner directed by FDA, DEA, or any of their designees.

7. Within five (5) calendar days of FDA's, DEA's, or any of their designees' request for any records related to College Pharmacy's sale, distribution, dispensing, procurement or other actions introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce somatropin, College Pharmacy shall submit a copy of the requested materials to the FDA, DEA, or any of their designees, in the manner directed by FDA, DEA, or any of their designees.

8. Within thirty (30) calendar days of entry of this Decree of Permanent Injunction, College Pharmacy shall retain an independent person or persons (the "expert"), without personal, financial (other than the consulting agreement between the parties), or familial ties to College Pharmacy or any officer or director of College Pharmacy or their immediate families, who by reason of background, experience, education, and training is qualified to assess College Pharmacy's compliance with the Controlled Substances Act. At the conclusion of the expert's review, the expert shall confer and work with College Pharmacy's directors and officers to confirm that College Pharmacy is acting in compliance with federal and state law.

9. Duly authorized representatives of FDA, DEA, or any of their designees shall be permitted, without prior notice and as and when FDA, DEA, or any of their designees deems necessary, to make inspections of College Pharmacy's facilities and records, including, but not limited to, business records, without prior notice, to take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree of Permanent Injunction. During such inspections, FDA, DEA, or designee representatives shall be permitted prompt access to buildings, equipment, in-process and finished materials, containers, labeling
5

and other materials therein; to take samples of College Pharmacy's finished and unfinished materials and products, containers, labels, labeling, and other promotional materials; and to examine and copy all records relating to the receipt, compounding, packing, labeling, promoting, holding and distribution of any and all College Pharmacy's products in order to ensure continuing compliance with the terms of this Decree of Permanent Injunction.[2] The inspections shall be permitted upon presentation of a copy of this Decree of Permanent Injunction and appropriate credentials. The inspection authority granted by this Decree of Permanent Injunction is separate from, and in addition to, the authority to conduct inspections under the Act, 21 U.S.C. § 374, but is limited to the inspection rights specified in paragraphs 6, 7, and 9 of this Consent Decree of Permanent Injunction.

10. Within ten (10) calendar days after the entry of this Decree of Permanent Injunction, College Pharmacy shall provide a copy of this Decree of Permanent Injunction, by personal service or certified mail (restricted delivery, return receipt requested), to each and all of its directors, officers, agents, representatives, employees, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including "doing business as" entities) (hereafter collectively referred to as "associated persons"). Within thirty-five (35) calendar days of the date of entry of this Decree of Permanent Injunction, College Pharmacy shall provide to FDA an affidavit of compliance, stating the fact and manner of compliance with the provisions of this paragraph and identifying the names and positions of all associated persons who have received a copy of this Decree of Permanent Injunction and the manner of notification. In the event that College Pharmacy becomes associated, at any time after the entry of this Decree

---

[2] The government inspectors agree that they will inform College Pharmacy of any and all records it copies during any inspection.

of Permanent Injunction, with new associated persons, College Pharmacy shall: (a) within fifteen (15) calendar days of such association, provide a copy of this Decree of Permanent Injunction to each such associated person by personal service or certified mail (restricted delivery, return receipt requested), and (b) on a quarterly basis, notify FDA in writing when, how, and to whom the Decree of Permanent Injunction was provided.

11. Within ten (10) calendar days of entry of this Decree of Permanent Injunction, College Pharmacy shall post a copy of this Decree of Permanent Injunction on a bulletin board in a common area at all of College Pharmacy's compounding or dispensing facilities, and shall ensure that the Decree of Permanent Injunction remains posted for a period of twelve (12) months at each location.

12. College Pharmacy shall pay a forfeiture judgment, entered by the Court in a separate order, to the United States in the total amount of $3,500,000, as follows:

> a. No later than beginning on March 1, 2009, College Pharmacy shall make monthly payments to the United States by the fifteenth (15th) calendar day of each month. The settlement sum shall be remitted in the form of certified funds, made payable to the United States Marshals Service, and submitted to the U.S. Attorney's Office per instructions provided by the United States;
>
> b. The payment amount for a particular month shall, at a minimum, be the lesser of the following: (I) $95,565; (ii) the College Pharmacy's "Net Profits" (as that term is defined below) for the Calculation month (as defined below); or (iii) the difference between three million five hundred thousand dollars ($3,500,000) and the total sum of payments made by the College Pharmacy as of that date. For purposes of this settlement, (a) "Net Profits" shall mean the gross revenue of

College Pharmacy, less all outlays and expenses, including, but not limited to, operating expenses, payments on all types of debt and other liability, excluding all payments due to Thomas Bader pursuant to the promissory note executed between College Pharmacy and Thomas Bader, but including pension plans, taxes, principal and interest payments; and (b) Calculation Month shall mean the month immediately preceding the month ending prior to the date the monthly settlement is due. To ensure that College Pharmacy is paying the lesser of $95,565 or Net Profits for the Calculation Month, College Pharmacy will provide the United States with a verified financial statement within six weeks from the date of payment for the previous month that shows an accounting of College Pharmacy's Net Profits for that month as defined above;

c. College Pharmacy may decide, in its sole discretion and in any month, to make a payment greater than the amount described in Paragraph 12(b) above;

d. College Pharmacy shall make payments totaling at least $850,000.00 within the first year, or by March 1, 2010; payments totaling $2,000,000.00 within the first two years, or by March 1, 2011; and payments totaling the full forfeiture judgment of $3,500,000.00 within three years, or by March 1, 2012;

e. College Pharmacy shall continue to make monthly payments until the total sum of the payments made by College Pharmacy to the United States reaches $3,500,000.00; and

f. In the event College Pharmacy is unable to meet the payment schedule described above, College Pharmacy may seek an extension of time for payment from the United States if College Pharmacy has been making good faith payments

and seeks an extension of time prior to the date that the payment is due. The parties understand that such an extension remains within the exclusive discretion of the United States.

13. College Pharmacy's obligation to fulfill the $3,500,000.00 forfeiture judgment is non-dischargeable in the event College Pharmacy files for bankruptcy because the forfeiture judgment is based on intentional conduct by College Pharmacy, by and through its officers and employees.

14. Three (3) years after the date of entry of this Decree of Permanent Injunction, or when College Pharmacy pays the agreed money judgment of $3,500,000.00, which shall be forfeited to the United States, whichever is later, if neither the FDA, DEA, nor any of their designees has notified College Pharmacy that there has been a significant violation of this Decree of Permanent Injunction or the Act during such time, College Pharmacy may petition the Court to dissolve this Decree of Permanent Injunction. The determination of the significance of a violation will be solely within the discretion of the FDA, DEA, or any of their designees.

15. This Decree of Permanent Injunction shall be enforceable in contract and under the contempt powers of the Court.

16. Upon demand by the United States for non-compliance by College Pharmacy of the payment terms of this Decree of Permanent Injunction outlined in paragraph 12, the United States is entitled to the immediate turnover of all assets, including, but not limited to, funds, bank accounts, real and personal property, accounts receivable, stocks, and investments belonging to College Pharmacy, Incorporated. In the event of non-compliance, this Decree shall be construed as a turnover order for all assets, including, but not limited to, funds, bank accounts, real and personal property, accounts receivable, stocks, and investments belonging to

College Pharmacy, Incorporated, whether held by College Pharmacy, Incorporated or College Pharmacy, Incorporated Employee Stock Ownership Trust, without further petition of the Court by the United States.

17. College Pharmacy and College Pharmacy, Incorporated Employee Stock Ownership Trust shall not transfer ownership of assets, stocks, or receivables without prior approval from the United States, which will not be unreasonably withheld.

18. This Consent Decree of Permanent Injunction shall bind the agents, principles, affiliates, successors, assigns, personal representatives, and heirs of the United States, College Pharmacy, Incorporated, and College Pharmacy, Incorporated Employee Stock Ownership Trust.

19. This Court retains jurisdiction of this action for the purpose of enforcing or modifying this Decree of Permanent Injunction and for the purpose of granting such additional relief as may be necessary or appropriate.

Dated this 26th day of January, 2009

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge